C. F. REUSEGGER, RESPONDENT, v. CHICAGO GREAT WESTERN RAILROAD COMPANY, APPELLANT.—29 S. W. (2d) 221.

Kansas City Court of Appeals. April 7, 1930.

*Brown, Douglas & Brown* for appellant.

*Shultz & Owen* for respondent.

ARNOLD, J.—This is an action to recover damages alleged to have been sustained by plaintiff as the result of obstruction of a water channel by defendant railroad company. The cause was tried to a jury, resulting in a verdict and judgment for plaintiff in the sum of $1,000. After unavailing motions for a new trial and in arrest of judgment, defendant appeals.

The petition alleges, in substance, that plaintiff is the owner of certain farm land in Buchanan County, Missouri; that a running stream, known as "Blacksnake Creek" in its natural water course, flowed through a portion of said land; that defendant, through its agents, wrongfully and negligently piled carloads of rock in said stream; that such obstruction filled up the channel and in so blocking and damming the flow of water therein, caused said creek to overflow plaintiff's land; that by reason of the aforesaid facts, on June 17, 1928, and again on September 11, 1928, plaintiff's land was flooded and growing crops thereon were destroyed. Damages are prayed in the sum of $3000. Defendant's answer is a general denial.

The record discloses that plaintiff was the owner of the farm land in question. Following its natural course, the small stream running through a portion of the land flowed in a southerly direction, but at a point near the southeast corner of plaintiff's land, it made somewhat of an abrupt right angle turn, and then on through a culvert erected in a county highway nearby. Thereafter, until it turned to the right and· entered a sewer under another highway known as "Karnes Road" said stream generally followed defendant's right of way. This sewer is twelve feet in diameter. Beginning at a point approximately 125 feet east of plaintiff's land, the stream had cut into and encroached upon defendant's right of way at various points. This controversy arose out of defendant's action in attempting to protect its tracks from such encroachment. In this attempt rip rap construction, consisting primarily of the dumping of heavy rock fill, was resorted to. This work first was undertaken in 1924 and additions were made by the dumping of three or four more carloads of large rock in 1925 and 1926. In the course of time, due to settling to the bottom of the rip rap, a large quantity of the rock so placed by defendant slid into the thread of the channel of the creek. It is this fill and obstruction which plaintiff asserts caused the overflow of his premises and the damage and destruction of his crops. The first of these overflows occurred June 17, 1928, and the second September 11, 1928. On May 7, 1926, plaintiff wrote defendant as follows:

"You have a rock fill on your right of way which slid into the Blacksnake Creek and caused it to dam and back water in on my

field. This may cause me considerable damage in case of high water. This can easily be fixed with a little labor on your part.

"Trusting you will give this your consideration, I am,

"Yours respectfully,

"(Signed) C. F. RUEGSEGGER."

The record is silent as to any action on the part of defendant to remedy the situation. It appears that on June 17, 1928, according to official records, there was a total rainfall of 3.63 inches; that is to say between 12 and 1 o'clock P. M. a fall of 1.85 inches, and between 2 and 3 o'clock P. M. a fall of 1.43 inches. About 4 P. M. of that day, approximately ten acres of plaintiff's land was flooded. The second overflow, covering some six acres, occurred sometime during the morning of September 11, 1928, prior to which (the official reports show) 1.16 inches fell between 1 and 2 A. M. and .38 of an inch fell between 2 and 3 A. M.

According to plaintiff's evidence there has been no flooding of his premises by the creek from 1917 to 1924, the date of the beginning of the fills of rock made by defendant. The official records introduced indicated several rains during the interim exceeding the falls at the times in question. It is also in evidence that prior to the alleged obstruction a two-inch rain falling within an hour did not cause an overflow, but that the creek would empty itself within that time. A total of seventeen carloads of rock were dumped by defendant adjoining its right of way immediately adjacent to the creek, some of which, as stated, found its way into the channel bed. Further evidence introduced by plaintiff tended to show that the obstruction and fill settling into the bottom of the creek caused a dam and back water, thus reducing its carrying capacity, resulting in the floods in question.

On the other hand, it is defendant's contention, and its evidence tended to show that the overflows were not caused or contributed to by the obstruction of the channel, but rather because of excessive rainfall on area drained; that the ordinary channel of Blacksnake Creek would not take care of the rainfall on the days in question; that the carrying capacity of the bridge and the sewer through which the channel ran were insufficient for the purpose provided; that the backing up was the result of the right angle turn in the stream bed. There was also evidence that the stream overflowed at various points north and south, distant from plaintiff's farm. However, relative to the bridge and the sewer, it was shown these were constructed prior to the alleged wrongful action on the part of defendant.

In the light of the record, defendant strenuously urges that the trial court erred in refusing its instructions in the nature of a demurrer to the evidence, because: (a) There is no substantial evidence that the obstruction caused by the sinking of the rip rap placed

along the bank was a proximate, efficient cause of any part of the overflow; (b) the evidence affirmatively shows an excessive rainfall which flooded the valley below and above the obstruction, which, it is asserted, conclusively proves that the highway bridge under which the water had to pass before reaching the fill was wholly inadequate to take care of any overflow; that under such circumstances the burden was upon plaintiff to reasonably exclude the unusual rainfall and the inadequate highway bridge as probable causes of his injury, and not leave the matter to speculation as to whether the alleged obstruction may have contributed thereto.

While it is true, as defendant urges, in an action for damages arising out of negligence, plaintiff is bound to prove not only that the defendant was negligent in the respects charged, and that such negligence was the direct and proximate cause of his injuries and damage, it is sufficient if the facts and circumstances given in the evidence are of such nature and so connected and related to each other that the conclusion of a causal connection therefrom may be fairly and logically inferred. Or, as the rule is sometimes stated, a person charged with negligence may be held liable for anything which, after the injury is complete, appears to have been a natural and probable result of his act or omissions. [Holloway v. Barnes Groc. Co., 15 S. W. (2d) 917; Daken v. Chase & Son Mer. Co., 197 Mo. 238, 94 S. W. 944; Combs v. Standard Oil Co., 296 S. W. 817; Mooney v. Monarch Gasoline & Oil Co., 317 Mo. 1255, 298 S. W. 69.]

We have carefully examined the record herein and find substantial evidence to warrant the submission of the case to the jury, within the rules announced by the authorities just cited. Plaintiff's evidence, though perhaps not entirely satisfactory, if believed, is sufficient to support the verdict. Accordingly we hold the instructions offered in the nature of a demurrer to the evidence were properly overruled.

Another charge is that the court erred in refusing defendant's instruction "E," which reads as follows:

"You are instructed that if you should believe from the evidence that the water overflowed plaintiff's land by reason of a heavy fall of rain, and not on account of any rock that the defendant may have placed or permitted to be in the stream described in evidence, then without regard to any other facts or circumstances in evidence, you must find your verdict in favor of the defendant."

It is evident this instruction covers matters of evidence in issue which were submitted to the jury for their determination in other instructions for defendant. The refusal of this instruction, therefore, could not constitute reversible error. In addition, the theory of its subject matter and purpose was sufficiently covered by defendant's instructions F, G, H, and I, which read as follows:

"F. The court instructs you that plaintiff seeks to recover damages from the defendant upon the theory that the defendant negligently caused or permitted the bed of the stream described in evidence to be filled up with rock to such an extent as to cause the waters of said stream to back up and overflow plaintiff's land, thereby destroying or damaging his crop growing thereon, and causing him to sustain financial loss, upon no other theory will plaintiff be permitted to have a verdict against the defendant, and you are therefore further instructed that the burden rests upon the plaintiff throughout the case to prove to your reasonable satisfaction by the preponderance or greater weight of all the credible evidence in the case, that the defendant did negligently cause the bed of the stream to be filled up or dammed up with rock to such an extent that the waters of said stream were thereby caused to back up and overflow plaintiff's land, and thereby damage or destroy his crops upon said land; and unless plaintiff has proven such facts and each of them, by such preponderance or greater weight of the evidence, you must find your verdict in favor of the defendant.

"G. You are instructed that if you should believe from the evidence that the culvert described in evidence was too small to accommodate the flow of water in and along the stream coming to said culvert, and that because of the smallness of said culvert, plaintiff's land was overflowed, and not on account of the rocks alleged to have been placed in the stream by the defendant, then you must find your verdict in favor of the defendant.

"H. The court instructs you that it is not sufficient for plaintiff to show that the defendant caused the bed of the stream described in evidence to be partially filled with rock, but before plaintiff will be permitted to have a verdict, he must go further and show by the preponderance of the credible evidence that said rocks caused the waters of the stream to back upon plaintiff's land and to thereby damage or destroy his crops growing thereon, and unless plaintiff has shown such fact by such preponderance of the evidence, you must find your verdict in favor of the defendant.

"I. The court instructs you that if you should believe and find from the evidence that plaintiff's land would have overflowed, and his crops would have been damaged to the same extent the land was overflowed and the crops were damaged, had the rocks complained of not been in the bed of the stream, then your finding will be in favor of the defendant."

As a whole, the instructions given fully and clearly submitted the case to the jury. In a consideration of the foregoing, there is no reason to suppose defendant was prejudiced by the refusal of its instruction "E".

Finally, it is urged that the damages allowed are excessive. By its verdict the jury awarded the sum of $1,000. Plaintiff's evi-

dence fixed the value of the property damaged and destroyed by the diversion of the water, as follows: two hundred bushels of potatoes $150.00; two thousand one hundred and forty dozen bunches of onions. $150.00; fifteen hundred dozen beets, $100.00; six thousand cabbages, value $200.00; five hundred cauliflower, value $75.00; twelve thousand celery plants, cost of seed $16.00; acre of beans, value $100.00; ten thousand gladiolus bulbs, value $200.00; costs of planting $100.00; spinach, seeds of which cost $10.00. The total value thus declared was $1101.00. There was also damage shown to six thousand tomato plants, on which the first three blooms were destroyed. However, there was no estimate given by plaintiff as to this loss.

What we have already said disposes of defendant's contention, in connection with this charge of error, that the damages may be attributed to causes other than those for which defendant would be responsible. With the above testimony in the record we are unable to hold the verdict is excessive. The cause was well tried, and viewing plaintiff's evidence as true as we must and resolving in plaintiff's favor all reasonable inferences to be drawn therefrom, the verdict of the jury is conclusive upon this court, in the absence of error prejudicial to any rights of defendant. Finding no such error, the judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.